The State of Ohio, Appellant, *v.* Gill, Appellee.

[Cite as State v. Gill (1977), 49 Ohio St. 2d 177.]

(No. 76-356—Decided February 23, 1977.)

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, and *Mr. Thomas P. Longano,* for appellant.
*Mr. Richard C. Gasen,* for appellee.

WILLIAM B. BROWN, J. The main issue presented by this cause is whether a police officer's affidavit in support of a search warrant is sufficient to show probable cause when that affidavit contains only information received from the personal observations of an unnamed confidential informant and the officer's avowal that the informant is "reliable."[1]

Appellant urges that such an affidavit does show probable cause because, in effect, (1) the affiant's *oath* is sufficient to establish, *"per se,* the credibility of the affiant's source," and (2) under *United States* v. *Harris* (1971), 403 U. S. 573, proof of the informant's credibility is not required when his "personal observation of criminal activity" supplies the factual basis of the informant's tip.

Appellant's first argument is not well taken. The Fourth Amendment requires that magistrates determine probable cause for themselves and that they not rely on the conclusions of the police. *Johnson* v. *United States* (1948), 333 U. S. 10, 14; *Giordenello* v. *United States* (1958), 357 U. S. 480, 486. Where a magistrate has only the sworn, but otherwise unsupported, assertion of a police officer that the informant is reliable, he has nothing upon which to base his determination of credibility but the officer's conclusion. Therefore, he cannot credit that unsupported assertion "without abdicating his constitutional function." *Spinelli* v. *United States* (1969), 393 U. S. 410, 416; *State* v. *Karr* (1975), 44 Ohio St. 2d 163, 165. This court's statement in

---

[1] The affidavit in support of the search warrant stated that a variety of narcotic drugs and the instruments for administering them were to be found at the apartment. In support of that allegation, the affidavit stated: "Information received from a confidential and reliable informant who has visited the premises within the past 72 hours and observed the above drugs and instruments for administering these drugs on the premises."

*State* v. *Karr* (*supra,* at page 165), that "[i]t is not sufficient that the affiant swear that his confidant was reliable, when no reason is offered the magistrate in support of that conclusion," applies to the instant cause.

Appellant's second argument is that, under *United States* v. *Harris, supra,* a showing of the informant's credibility (where the affiant is not the informant) is not required when his "personal observation of criminal activity" supplies the factual basis of the informant's tip.

Although affidavits for search warrants may be based on the hearsay testimony of a confidential unnamed informant, they must, in order to insure that magistrates determine probable cause for themselves, incorporate "a substantial basis for crediting the hearsay." *Jones* v. *United States* (1960), 362 U. S. 257, 269. Under *Aguilar* v. *Texas* (1964), 378 U. S. 108, 114, that "substantial basis" must include (1) information about the facts upon which the informant based his allegations of criminal activity, and (2) "some of the underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable.' "² Appellant urges, however, that under *United States* v. *Harris, supra,* the informant's personal observations of criminal activity, which have usually satisfied the first part of the *Aguilar* test (*State* v. *Karr, supra,* at page 165), should also suffice to satisfy the second part of the *Aguilar* test for probable cause.

Appellant's interpretation of *United States* v. *Harris, supra,* is erroneous.

Four Justices in the *Harris* case stated, at pages 579-580:

"* * * While a bare statement by an affiant that he believed the informant to be truthful would not, in itself, provide a *factual* basis for crediting the report of an unnamed informant, we conclude that the affidavit in the present case contains an ample factual basis for believing the informant which, *when coupled with affiant's own knowledge of the*

---

²Crim. R. 41 (C) sets out the same test.

*respondent's background,* afforded a basis upon which a magistrate could reasonably issue a warrant."[3] (Emphasis added.)

In the present cause the only allegation in support of the informant's credibility is the officer's statement that the *informant* had personally observed the suspect's criminal activities. Unlike the allegation in *Harris* that the *affiant* had personal knowledge of the suspect's activities or the allegation in *State v. Karr, supra,* that the informant had given reliable information *in the past,* the affidavit herein relies upon the *informant's* statement to corroborate the *informant's* credibility. By failing to provide independent corroboration of the informant's credibility, the affidavit does not lessen "the chances of a reckless or prevaricating tale" *(Jones v. United States, supra,* at page 271) and does not give the magistrate an opportunity to make an independent determination of probable cause. The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., CELEBREZZE and SWEENEY, JJ., concur.
HERBERT, P. BROWN and LOCHER, JJ., dissent.

LOCHER, J., dissenting. A thorough reading of *United States v. Harris* (1971), 403 U. S. 573, 577, reveals Chief Justice Burger's exhortation to heed the sound admonition of *United States v. Ventresca* (1965), 380 U. S. 102, 108, as follows:

"* * * [T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the court's cases are to be followed and the constitutional policy served, affidavits for search war-

---

[3]Four Justices in the *Harris* case also found the fact that the informant's tip was a statement against interest to be corroborative of the informant's credibility.

rants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

Apparently, the majority has decided not to heed the admonition, but instead has applied a rigid, technical standard for the nonrigid standards of "reasonableness" and "probable cause" formulated in the Fourth Amendment.

The finding of the affidavit to be deficient was the result of the majority's applying the test developed in *Aguilar* v. *Texas* (1964), 378 U. S. 108. Reflective analysis of the opinion in *Aguilar* exposes that court's concern with a situation not presented in this cause. In *Aguilar*, the warrant was issued on an affidavit stating:

" 'Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of law.' " *Aguilar, supra,* at page 109.

Therefore, the affidavit was a "mere affirmation of suspicion and belief." *Nathanson* v. *United States* (1933), 290 U. S. 41, 46. No allegation of "personal knowledge" of either the affiant or the unidentified source was contained in the affidavit. The affidavit merely gave the appearance that either the affiant or the unidentified informant, or both, merely suspected, believed or concluded that there were narcotics in petitioner's possession. The magistrate was thus forced to accept " 'without question' the informant's 'suspicion,' 'belief' or 'mere conclusion.' " *Aguilar, supra,* at page 114. The concern, in *Aguilar*, was that acceptance of this affidavit would create an easy circumvention, as illustrated in that court's footnote No. 4, at page

114, relating to previous decisions.[4] This concern is not presented by the facts of this cause. The present affidavit was not based on the "suspicion," "belief," or "mere conclusion" of the unnamed informant, but on a recent personal observation of the drugs and instruments for administering the drugs on the premises of appellee.

The object of concern in *Aguilar*, a magistrate being forced to accept the informant's "suspicion," "belief," or "mere conclusion," is absent here. Therefore, to apply the rigid, technical test formulated in *Aguilar* not only appears to be using a sledgehammer to kill a fly, but is to retreat from accepted legal thought, as Justice Black so artfully satirized in his dissenting opinion in *Spinelli* v. *United States* (1969), 393 U. S. 410, at page 434:

"Notwithstanding the court's belief to the contrary, I think that in holding as it does, the court does:

" 'retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck* v. *Ohio*, 379 U. S. 89, 96 (1964) ; that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray* v. *Illinois*, 386 U. S. 300, 311 (1967) ; that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States* v. *Ventresca*, 380 U. S. 102, 108 (1965) ; and that their determination of probable cause should be paid great deference by reviewing courts, *Jones* v. *United States*, 362 U. S. 257, 270-271 (1960).' *Ante*, at 419."

Courts have long sought to strike a balance between

---

[4] "To approve this affidavit would open the door to easy circumvention of the rule announced in *Nathanson* and *Giordenello* [357 U. S. 480]. A police officer who arrived at the 'suspicion,' 'belief' or 'mere conclusion' that narcotics were in someone's possession could not obtain a warrant. But he could convey this conclusion to another police officer, who could then secure the warrant by swearing that he had 'received reliable information from a credible person' that the narcotics were in someone's possession."

two opposing poles—the security of citizens from unreasonable invasion of their privacy and the granting of fair leeway for the enforcement of laws necessary to protect our communities. "Probable cause" is the *practical, nontechnical* conception that has served as an adequate compromise between these opposing interests. The substitution of the technical and rigid formula espoused by the majority will add additional perplexity to the present overwhelming burden shouldered by our law enforcement officers. Ironically, this hypertechnical and perplexing standard will handcuff the police and aids the detected criminal to remain unpunished.

I believe that the substitution of technicality for practicality obstructs the administration of justice. Therefore, I respectfully dissent.

HERBERT and P. BROWN, JJ., concur in the foregoing dissenting opinon.

